**Robert L. MELVILLE, Individually and Derivatively in the Right and for the Benefit of Theil, Inc., Plaintiff,**

v.

**Walter C. WANTSCHEK et al., Defendants.**

**FEDERAL DEPOSIT INSURANCE COR-PORATION, as receiver, Third-party Plaintiff,**

v.

**Henry A. SHAPIRO, Esq., et al., Third-party Defendants.**

**No. 69 Civ. 1617.**

United States District Court, E. D. New York.

Oct. 31, 1975.

Schwenke & Devine, New York City, for plaintiff.

Sahn, Shapiro & Epstein, New York City, for Franklin National Bank.

Konheim, Halpern & Bleiwas, New York City, for Shapiro, Driscoll & Gottschalk on cross claims.

Shapiro, Driscoll & Canzomeri, Franklin Square, N. Y., for Shapiro, Driscoll & Gottschalk on main claim.

Santangelo & Santangelo, New York City, for Theil, Inc. (3d cause).

John Mitchell, New York City, for Theil Inc. (1st & 2d cause), and Wantschek, Sicinski, Rossi, Guttenberg and Walsh.

## OPINION

PLATT, District Judge.

After six years of pre-trial maneuvering and the fairly recent filing by the plaintiff of an amended complaint and an amended pre-trial order, defendant Franklin National Bank (Federal Deposit Insurance Corporation, as Receiver— hereinafter "Franklin") has moved pursuant to FRCP 56 for summary judgent with respect to the first and second claims against it (the third through sixth claims are not made against said defendant) in plaintiff's amended complaint.

Plaintiff in his first claim against Franklin alleges that Franklin, as transfer agent of Theil, Inc., wilfully, wrongfully, negligently and recklessly has since July 2, 1968 refused to permit plaintiff to sell some 9,888 shares of unregistered Theil stock and that as a result thereof plaintiff has been damaged in the sum of at least $165,000.

In his second claim, plaintiff realleges his first claim and aserts that Franklin wrongfully and fraudulently exercised dominion over and converted to its own use and benefit said 9,888 shares of Theil stock and seeks damages in the sum of $183,000 plus punitive damages in the sum of $500,000.

The following are facts which were stipulated by the parties or as to which there appears to be no dispute:

Plaintiff was and is a citizen of the State of Pennsylvania.

Defendant Theil, Inc. (formerly Theil Publications, Inc.; herein "Theil") was and is a New York corporation with its principal place of business in this State.

On September 23, 1971 Theil filed an assignment for the benefit of creditors in Nassau County, New York.

Franklin was a national banking association organized and existing under the laws of the United States.

On October 8, 1974 the Comptroller of the Currency declared Franklin to be insolvent and designated Federal Deposit Insurance Corporation as Receiver for said bank.

At all relevant times Franklin acted as transfer agent for the shares of stock of Theil pursuant to an appointment dated June 10, 1961.

At all relevant times defendants Henry A. Shapiro, Thomas L. Driscoll, Jr. and Stanley Gottschalk ("Gottschalk") comprised a law partnership doing business as Shapiro, Driscoll & Gottschalk and prior to November 1970 they were and acted as counsel for Theil.

In or about April 1963 plaintiff became employed by Ewing Technical Design, Inc. ("Ewing").

From 1965 through 1967 Ewing was a subsidiary of Theil.

Plaintiff issued the following checks to the following persons in payment for Theil's stock:

| Seller | Date | Amount of Check |
|---|---|---|
| Nathan Abramowitz | June 29, 1965 | $2,625.00 |
| Louis Sepe | June 29, 1965 | 2,400.00 |
| Louis Sepe | Feb. 6, 1966 | 403.00 |
| Louis Sepe | Feb. 6, 1966 | 40.00 |
| Louis Sepe | July 26, 1966 | 2,000.00 |
| Walter Wantschek | May 29, 1967 | 2,100.00 |

Plaintiff wrote the following investment letters pertaining to his purchases of Theil stock:

1. June 29, 1965 to Nathan Abramowitz for 3500 shares.
2. June 29, 1965 to Louis Sepe for 3200 shares.
3. June 16, 1966 to Messrs. Shapiro, Driscoll & Gottschalk for 9,888 shares.
4. May 29, 1967 to Messrs. Shapiro, Driscoll & Gottschalk for 2,000 shares.

Theil common stock was issued in plaintiff's name as follows:

1. Certificate CU 603—9,888 shares issued July 1, 1966
2. Certificate CU 657–2,000 shares issued July 21, 1967

Investment stops were placed on records of Franklin for plaintiff's shares as follows:

1. July 5, 1966 with respect to CU 603–9,888 shares
2. July 24, 1967 with respect to CU 657–2,000 shares

Plaintiff concededly was aware of the contents of the investment letters which he signed.

By letter dated February 7, 1968, plaintiff applied to the Securities and Exchange Commission for a "no-action" letter on the sale of his 11,888 shares of Theil common stock without compliance with the registration requirements of the Securities Act of 1933. In reply thereto in a letter dated February 23, 1968 the Assistant Chief Counsel of the Division of Corporation Finance of the SEC wrote to the plaintiff in pertinent part that:

"You state that you are employed as a salesman for Ewing Technical Design, Inc. ('Ewing'), a subsidiary of Theil, Inc., and that you have never been an officer, director, or controlling person in Theil, Inc., nor in any subsidiary of Theil, Inc. You further state that you acquired the above-mentioned stock as follows: 9,888 shares were purchased from Nathan Abramowitz, former President of Ewing, and were issued to you on July 1, 1966 under an investment letter. In May 1967, you purchased an additional 2,000 shares from Walter W. Wantschek, President of Theil, Inc., which shares were issued to you on July 21, 1967, also under an investment letter.

"On November 22, 1967, you state you filed for divorce in Philadelphia, Pennsylvania. You desire to sell these securities in order to pay for the costs of your pending divorce and attorneys fees.

"On the basis of the facts presented, and in view of the short period of time the shares have been held, we are unable to conclude that these shares may be sold without compliance with the registration requirements of the Securities Act of 1933."

On March 10, 1968 the plaintiff wrote to Mr. Stanley Gottschalk requesting an opinion letter permitting him to sell 2,000 shares of his Theil stock. Plaintiff, however, did not advise Gottschalk that he had just made an application to the SEC for a "no-action" letter which had been denied.

Based on various representations in plaintiff's letter dated March 10, 1968, regarding his need for money to pay funeral expenses and his shortage of cash, Gottschalk's law firm, by letter dated March 12, 1968 to Franklin, rendered an opinion that the transfer by the plaintiff of 2,000 of these unregistered shares would not constitute a violation of the Securities Act of 1933, as amended.

On March 15, 1968, plaintiff, through his securities broker, submitted to Franklin Certificate CU 603 for 9,888 shares with Mr. Gottschalk's opinion letter of March 12, 1968 and plaintiff sold 2,000 shares of Theil, Inc. stock as follows:

1. March 19, 1968—1,000 shares for $4,880;
2. April 11, 1968— 500 shares for $2,554.35;
3. April 18, 1968— 500 shares for $2,501.85

Total $9,636.20

On May 31, 1968 plaintiff was discharged by Ewing.

In a letter dated July 2, 1968, plaintiff wrote Gottschalk again requesting his opinion that he was free to sell all of his shares of Theil based on a claim that he had held the shares long enough and that his "circumstances have changed decidedly" in that "in seeking new employment I have found a distinct reluctance on the part of potential employers to hire me because of my stock position with Theil" and in that he had lost his position with Theil.

Even though plaintiff still had not advised Gottschalk that he had made previous application to the SEC for a "no-action" letter which request had been turned down, Gottschalk declined to issue the requested opinion letter and suggested to plaintiff that he apply to the SEC. Plaintiff, however, did not accept this suggestion.

By agreement dated August 7, 1968, plaintiff began a new employment with Numerical Control Program & Education, Inc. ("Numerical") under the terms of which plaintiff's employment was not to commence until October 14, 1968. Plaintiff invested in Numerical, purchasing 15,000 shares at a total price of $13,800 which he obtained by a loan from Philadelphia National Bank. Plaintiff and his wife executed a note evidencing such loan and as security therefor plaintiff pledged 6,000 shares of his Theil stock. In August of 1968 plaintiff, through securities brokers, submitted to Franklin 3,000 of his Theil shares which he had not pledged with the request that registration be transferred from his name. On August 28, 1968, Franklin wrote Gottschalk asking whether the restrictions had been lifted with respect to these 3,000 shares of the plaintiff and on August 29, 1968, Gottschalk replied that to the best of his knowledge the stock continued restricted.

On October 15, 1968, Messrs. Dechert, Price & Rhoads, a distinguished Philadelphia law firm, wrote to Gottschalk on behalf of the plaintiff stating that they had been advised that Gottschalk had taken the position that Mr. Melville was entitled to sell no more than 1% of the outstanding stock of Theil within any six month period which would permit him to sell approximately 3,550 shares on a date after October 18, 1968 and asking Gottschalk to advise Theil's transfer agent (Franklin) of his right to make this sale at that time. There is no indication that Franklin ever received a copy or that it was advised of the contents of such letter.

On October 17, 1968, Mr. Gottschalk wrote to Messrs. Dechert, Price & Rhoads advising them that plaintiff had purchased his stock under a "letter of investment" and that before his firm could write an opinion permitting him to sell the stock "it must be shown that there is a substantial change of circumstances".

On October 21, 1968, again without a copy to Franklin, Messrs. Dechert, Price & Rhoads wrote to Gottschalk stating that plaintiff had been out of work for approximately three months and that as an incident to his obtaining new employment he had to purchase stock of his new employer and that he was unable to pay for such stock without selling his Theil stock and asked for Gottschalk's opinion that such constituted a sufficient change of circumstances so that plaintiff might sell his stock.

On October 29, 1968, Mr. Gottschalk wrote plaintiff's Philadelphia lawyers stating that based on the facts given his firm could not issue the requested opinion and suggesting that plaintiff attempt to procure a "no-action" letter from the SEC.

On August 15, 1968 plaintiff travelled to Europe with his wife and children where he stayed until October 11, 1968, and as heretofore indicated, plaintiff had paid for his stock investment in his new employer with the proceeds of a loan he obtained from a Philadelphia bank, which loan he secured by the pledge of some of his Theil stock as collateral. It is further conceded that Messrs. Dechert, Price & Rhoads, were counsel to plaintiff's new employer Numerical.

On December 27, 1968, Messrs. Dechert, Price & Rhoads wrote Franklin stating that the plaintiff had been prevented from selling his Theil stock because a "change of circumstances" was necessary before such a sale could be permitted and advising Franklin that in their opinion the plaintiff had experienced such a change of circumstances and threatening it with a lawsuit if it refused to transfer the shares sold by the plaintiff.

On January 3, 1969, Mr. Gottschalk replied stating that the facts presented by the plaintiff raised a question in his mind concerning the "change of circumstances" and under such conditions he could not write the requested opinion letter and again suggested that the plaintiff seek a "no-action" letter from the SEC.

During the period from January through April, 1969, plaintiff made the following open market (over-the-counter) sales of Theil stock:

| Settlement Date | No. of Shares | Net Proceeds |
|---|---|---|
| (a) 1/24/69 | 100 | $ 809.75 |
| (b) 2/ 7/69 | 100 | 1,280.00 |
| (c) 2/17/69 | 100 | 1,577.00 |
| (d) 2/19/69 | 100 | 1,775.00 |
| (e) 2/20/69 | 100 | 1,799.75 |
| (f) 4/ 3/69 | 100 | 1,478.00 |
| (g) 4/ 7/69 | 100 | 1,478.00 |
| (h) 4/10/69 | 100 | 1,453.25 |
| (i) 4/11/69 | 100 | 1,428.50 |

The submissions of Theil certificates to Franklin in connection with these sales were the first submissions by plaintiff (or buyer's brokers) pursuant to sale transactions since April, 1968. Franklin declined to transfer registration of the stock certificates which plaintiff delivered in fulfillment of these sale contracts and referred the submitters to Mr. Gottschalk, counsel for Theil.

On November 3, 1969, the New York law firm of Messrs. Skadden, Arps, Slate, Meagher & Flom wrote to Franklin on behalf of plaintiff alleging that Franklin and others acting in concert with them had failed "to permit Mr. Melville from registering shares of Theil common stock owned by him for transfer."

On November 7, 1969, Mr. Gottschalk replied to said New York law firm stating that "If Mr. Melville will undertake to pay the expenses of registration (filing registration statement)" he would be happy to discuss with Theil "what further steps, if any, can be taken concerning the proposed registration."

Messrs. Skadden, Arps, et al., apparently replied further stating that plaintiff wished permission to sell by exemption from registration, to which Gottschalk on November 14, 1969 wrote again that he had recently "explained to Mr. Melville what information and factual data would be required from him to achieve his desired purpose (of showing a change of circumstances) at which

time Mr. Melville promised that he would send to me this information" which plaintiff apparently never did.

In order to cover the above-indicated open sale contracts which Franklin refused to transfer, plaintiff made open market purchases as follows:

| Settlement Date | No. of Shares | Total Cost |
|---|---|---|
| 5/ 1/69 | 100 | $1,370.50 |
| 5/ 2/69 | 100 | 1,471.50 |
| 7/31/69 | 100 | 789.75 |
| 9/11/69 | 200 | 1,781.50 |
| 12/ 9/69 | 200 | 1,049.26 |

## THE ISSUE

With respect to Franklin, the issue for determination on this motion for summary judgment would appear to be whether or not Franklin since July 2, 1968 willfully, wrongfully, negligently and/or recklessly refused to permit plaintiff to sell all or any part of his remaining shares of Theil stock.

Plaintiff appears to claim that Franklin's negligence is shown in its failure to follow its usual procedure for resolving conflicting legal opinions on the transferability of stock in this particular case. More specifically, plaintiff claims that the pre-trial depositions of Franklin established that when stock subject to an investment letter was received by Franklin it was Franklin's normal procedure to inquire of issuer's counsel as to the status of the stock and if such counsel rendered an opinion that transfer would be wrongful and when Franklin had received a contrary opinion from a shareholder's attorney, then the matter would be referred to Franklin's counsel. Plaintiff's counsel argues that such was the situation in the case at bar but that Franklin never referred the matter to its counsel "in clear disregard of normal procedure".

## DISCUSSION

██ As a preliminary matter, it it should be noted that Franklin was on written notice that all of plaintiff's shares in Theil were subject to investment letters signed by the plaintiff and it was apparently repeatedly advised by counsel of the issuer Theil that plaintiff's stock continued subject to such investment letters or continued restricted.

Although Franklin did receive a letter from Messrs. Dechert, Price & Rhoads that in their opinion plaintiff should be permitted to sell his stock because of his change of circumstances, such letter did not constitute an "opinion letter" in the traditional sense. It contained no statement of facts and indeed not even an indication as to the basis for the alleged opinion.

In each instance where it received a letter from counsel for the plaintiff, Franklin took the appropriate step under the circumstances, namely: it referred the letter to counsel for the issuer for the further development of the facts and the basis for the inquiry.

Franklin appears to be unquestionably correct in its contention that since no facts were presented to it by the plaintiff or his counsel there was in effect nothing for it to present it to its counsel.

In fact, a careful analysis of what has been presented to this Court on this motion shows that little, if anything but claims that the plaintiff was entitled to transfer were presented to Franklin and this is true even if it is assumed that all of the information given to Mr. Gottschalk was also transmitted to Franklin.

If anything stands out from the documents furnished to the Court on this motion, it is that Mr. Gottschalk explained to the plaintiff what information and factual data would be required from him to achieve his desired purpose and plaintiff never furnished the same. Moreover, Mr. Gottschalk repeatedly urged plaintiff and his counsel to obtain a "no-action" letter from the SEC which plaintiff for some reason did not do.

Lurking in the background of this whole affair, and perhaps the reason for plaintiff's failure to seek a "no-action"

445

letter from the SEC, was plaintiff's undisclosed prior attempt to obtain such a letter from the SEC which, as indicated above, was rejected.

Plaintiff argues on the one hand, in effect, that his original investment intent is unassailable and that the lapse of time since his acquisition plus his alleged "change of circumstances" were sufficient to require Franklin to take more steps than it did in connection with his requested transfers and, on the other hand, that his shares should never have been restricted in the first instance and, in effect, that Franklin should have known this or made an investigation to determine it.

With respect to plaintiff's first argument, Franklin presumably knew that the plaintiff acquired his shares of stock between June 29, 1965 and May 29, 1967 and gave investment letters with respect to each of his purchases. Franklin presumably also was aware of the SEC's so-called "fungibility" rule which attaches with each new acquisition a new starting period to all holdings so that in the case at bar, insofar as the SEC was concerned, plaintiff was deemed to have acquired all of his shares on May 29, 1967.

Franklin further presumably knew that the plaintiff started attempting to sell his shares in March of 1968, less than ten month after such "acquisition" date. Actually in fact, plaintiff unbeknownst to Franklin had started a month earlier when he applied to the SEC for a "no-action" letter.

In July, August, October and December of 1968 plaintiff made further attempts to sell his shares, and, as indicated above, in no instance did the plaintiff set forth the kind of statement of facts which would be required to show a "change of circumstances" which would have justified the issuance of a "no-action" letter or an opinion of counsel to such effect. The same situation prevailed in 1969.

Moreover, it appears highly doubtful, based on the above stated stipulated facts, whether plaintiff was ever in a position to present facts which would have supported such a letter or opinion. Under the circumstances, it cannot be said to have been negligence on the part of Franklin to have done what it did on this score.

Secondly, plaintiff, as indicated, has belatedly advanced the argument that his stock never should have been restricted in the first instance.

In light of plaintiff's prior unsuccessful attempt to obtain a "no-action" letter on the basis that his stock was restricted and that he never made any such suggestion to Franklin or Gottschalk until the very eve of this motion, it ill behooves him now to claim that his unregistered shares of Theil stock were free for transfer ab initio because he never acquired them from the issuer or from "control persons" within the meaning of the Securities Act and the regulations promulgated thereunder.

In any event, regardless of whether such persons were "control persons", they too acquired and held the shares under investment letters and clearly acted as "links in the chain of transmission of securities issuers * * to the public" (Disclosure to Investors —A Reappraisal of Federal Administrative Policies under the 1933 and 1934 Acts—the Wheat Report 161, Goldberg, Private Placement and Restricted Securities, 1972 § 7.3[b] at page 7–10, Loss, Securities Regulation Chap. 3A at page 550) and plaintiff represented a further link in transmitting such unregistered shares into the hands of the general investing public and hence was a "statutory underwriter" as that term is commonly used. See SEC v. Guild Films Co., 279 F.2d 485 (2d Cir. 1960).

Far from acting negligently and wrongfully as plaintiff alleges, Franklin and Mr. Gottschalk appear to have acted prudently and properly in making every effort to comply with the provisions of the law. Any other position taken by either or both of them might well have

subjected them to action by the Securities and Exchange Commission.

Under all of the circumstances, there is no question in the Court's mind but that Franklin's motion for summary judgment must be granted and it is

So ordered.

### SUPPLEMENTAL OPINION

Defendants Stanley Gottschalk ("Gottchalk"), Henry A. Shapiro ("Shapiro"), Thomas L. Driscoll, Jr. ("Driscoll") and Shapiro, Driscoll & Gottschalk ("Gottschalk's law firm"), have also moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) on the grounds that plaintiff's Fourth and Fifth claims (the only ones against them) in plaintiff's amended complaint fail to state a cause of action, are barred by the applicable statute of limitations and laches and that there is no triable issue of fact with respect to said defendants.

What has been said in this Court's opinion on the similar motion of the defendant Franklin National Bank being filed simultaneously herewith would appear to be equally applicable to these defendants. Plaintiff, however, charges these defendants with "conversion" and "fraud" in his aforesaid claims against them.

■ Defendants clearly appear to be correct in their contention that no facts have been alleged by the plaintiff which would sustain a claim for conversion and hence plaintiff may not pursue his claim on this basis. Moreover, any claim for conversion would appear to be barred by the three year Statute of Limitations prescribed by Section 214 of the New York Civil Practice Law and Rules.

There are, however, facts stated in the amended complaint upon which a claim of fraud might be based. In his amended complaint served and filed in February of 1975 plaintiff alleges that "In the period from 1968 through 1970 Gottschalk, acting on behalf of the Partnership, refused to lift stop transfer orders which had been imposed upon plaintiff's stock in Theil, Inc. * * * In so refusing to lift stop transfer orders against plaintiff's stock Gottschalk acted unlawfully, capriciously, in bad faith, and for his personal enrichment, or, in the alternative, for the enrichment of the partnership, in that he demanded from plaintiff the payment of $1500 as a prerequisite to lifting the stop transfer orders against plaintiff's stock."

In an affidavit filed in opposition to this motion, plaintiff avers that the alleged fraud occurred in a meeting held in August of 1969 in which the defendant Gottschalk is alleged to have demanded $1500 to transfer plaintiff's shares of stock.

■ It is true that the defendants claim that there was no communication between any of them and the plaintiff or his representatives after January of 1969 other than a letter dated November 3, 1969 from plaintiff's attorney and replies thereto in which there were no references to any such demand. This, however, merely raises a question of fact which must be tried by a jury.

If the proof shows that the alleged demand was made more than six years prior to the service and filing of the amended complaint, then, of course, the six year Statute of Limitations for fraud in New York might be applicable but here again this is an issue of fact for determination at the trial.

■ The defendant Shapiro has filed a separate affidavit in which he states that he retired as a member of the Gottschalk law firm and severed his connection with it on March 31, 1967. This is confirmed by an affidavit of his "former" partner, the defendant Driscoll.

Unfortunately for the defendant Shapiro, however, his "former" partners may have continued to hold him out to the public as a full partner as is evident from the letterhead used in the above-mentioned reply to plaintiff's counsel under date of November 7, 1969. Such

being the case, this issue will also have to await the trial of this case.

For the foregoing reasons said defendants' motion for summary judgment must be and the same hereby is denied.

So ordered.

The case will be called on November 14th at 11 AM to make arrangements for an appropriate trial date.