141 N.J. Super. 425 (1976)
358 A.2d 505
THE CHARTER OAK BANK & TRUST COMPANY, PLAINTIFF,
v.
REGISTRAR & TRANSFER COMPANY, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
NATIONAL ENVIRONMENTAL CONTROLS, INC., FELDSHUH & FRANK, SIDNEY FELDSHUH, MARTIN M. FRANK, NUNZIO SQUILLANTE, ANTHONY D'AGOSTINO, NEW ENGLAND CARTING COMPANY, INC., AND JOHN N. VALIANOS, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 10, 1976.
*427 Mr. William C. Meehan for plaintiff (Messrs. Contant, Contant & Meehan, attorneys).
Mr. Robert D. Herpst for defendant and third-party plaintiff (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Jerome M. Selvers for third-party defendant Feldshuh & Frank (Messrs. Chasan, Leyner, Holland & Tarrant, attorneys).
*428 BILDER, J.S.C.
This is a suit by a pledgee of stock against a corporate stock transfer agent for damages resulting from a failure to transfer stock and for conversion based on a wrongful refusal to transfer and the stamping of a restrictive legend on the stock certificate. Plaintiff, a Connecticut bank (hereinafter bank), held a certificate for 10,000 shares of the common capital stock of National Environmental Controls, Inc. (then known as Arizona Biochemical Company, Inc.; hereinafter National) as security for indebtedness owed to it. When the obligations for which the certificate stood as collateral came into default, the bank sought to foreclose on the collateral by selling it on the public market through brokers. When the brokers delivered the stock certificate to the corporate transfer agent for transfer in connection with the sale, the Registrar and Transfer Company, Inc. (hereinafter R&T) refused to transfer the stock, stamped it with a restrictive legend, and returned it to the broker with advice that the requested transfer could not be made unless an opinion of counsel was furnished to show that this transfer was within the exemptions of the Securities Act of 1933 (15 U.S.C.A. 77a et seq.) (hereinafter Securities Act).
The stock in question had been issued to John N. Valianos on October 13, 1965. At that time Valianos was, as appears from the certificate itself, the president of the company. In connection with the issuance of the stock certificate National received an "investment letter" from Valianos in which he acknowledged that the stock was being issued under the exemptions of § 4(2) of the Securities Act and in which he represented his intention to purchase the stock "for investment purposes only and not with a view to distribution".
R&T was notified by National at that time of the issuance of this "letter stock" and accordingly it noted in its records that this was unregistered stock and should not be transferred in the absence of either registration or an opinion of counsel that the transfer did not require registration. *429 Subsequently, on September 3, 1968 R&T was advised by National that any such stock, if presented for transfer, should be stamped with a legend reflecting its unregistered status and returned to the person seeking transfer.
In late August of 1969, when the stock certificate was delivered for transfer, R&T knew that Valianos owned at least 19% of the outstanding common capital stock of National.
The matter arises on cross-motions for summary judgment in which, in substance, plaintiff alleges a duty by R&T to transfer in accordance with §§ 8-406(1) and 8-401 of the Uniform Commercial Code (U.C.C.) and defendant alleges that the transfer was forbidden by the Securities Act.
As appears from the affidavits, depositions and exhibits, the following facts are not in dispute:
1. National is and was at all relevant times a corporation of the State of Delaware.
2. R&T is a corporation of the State of New Jersey with its principal place of business in Jersey City.
3. The bank is the holder as pledgee of certificate JU243 registered in the name of John N. Valianos for 10,000 shares of the common capital stock of National.
4. Certificate JU243 was issued October 13, 1965 under the exemption of § 4(2) of the Securities Act.
5. R&T, at all relevant times, was transfer agent for National.
6. R&T was notified by National at the time of the issuance of JU243 that these shares were being issued under the exemptions of § 4(2) and was furnished with a copy of an investment letter signed by Valianos. R&T had accordingly noted in its records that this was unregistered stock and should not be transferred unless there was a registration or in the opinion of counsel for the company the transfer did not require registration  i.e. a "stop transfer order" had been noted.
*430 7. On about September 3, 1968 R&T was instructed by National that "investment shares" coming into its hands should thereafter be stamped with an investment legend in a communication which read as follows:
We have noted in the past that it has been the policy of Registrar & Transfer to return investment stock to the person submitting the same with your form advice letter.
Many of the certificates presented to you for transfer do not have endorsed thereon the legend evidencing that said shares are investment shares, although appropriate "stop transfer orders" are in effect in your office.
In the future, whenever any certificates of Arizona Biochemical Company are presented for transfer, against which there are stop transfer orders and said certificates do not have endorsed thereon any legend, then you are instructed and directed to place the investment legend on said certificate, prior to the return of the same to the party submitting the same.
If you have any questions, please call me.
8. In October 1968 the bank acquired certificate JU243 in substitution of other stock certificates previously pledged as collateral. It knew at the time of the pledge of National's stock that Valianos was its president.
9. In August 1969 the bank as pledgee foreclosed on the collateral and in connection therewith delivered certificate JU243 to its brokers for sale.
10. Between August 25 and September 4, 1969 the bank's brokers sold 5500 shares of the 10,000 shares of National.
11. On or about August 26 or 27, 1969 the brokers delivered certificate JU243 to R&T for transfer.
12. At the time R&T received certificate JU243 for transfer it knew that Valianos owned at least 19% of National shares.
13. On September 10, 1969 R&T returned certificate JU243 to the brokers and advised them as follows:
The transfer above described is returned herewith.
We cannot make the transfer requested unless we are furnished with an Opinion from Counsel for the Company setting forth the statutory reason to permit the transfer of the stock under the existing regulations of the Securities Act of 1933, as amended. *431 The Opinion should also indicate whether or not a restriction and whether or not a restrictive legend should be affixed thereto.
Please submit this matter directly to Counsel for the Company who is:
 Martin M. Frank, Esq.
 Feldshuk and Frank
 144 East 44th Street, New York, N.Y.
14. Before returning certificate JU243, R&T stamped the following legend on the face of the certificate:
THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933. THE SHARES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE PLEDGED OR HYPOTHECATED, AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THE SHARES UNDER THE SECURITIES ACT OF 1933, OR AN OPINION OF COUNSEL TO THE COMPANY THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT.
15. On September 12, 1969 the bank requested a "no action" letter from the Securities and Exchange Commission and received the following reply:
This is in reference to your letter of September 12, 1969 regarding the sale of 5500 shares of Arizona Biochemical Company common stock by The Charter Oak Bank and Trust Company (the "Bank").
You state that the Bank acquired these shares as collateral for a loan in April 1968. After no response was received from demands by the Bank for payment on the note, 5500 shares of stock were sold in August and September 1969. Subsequently, the Bank learned that the stock was restricted and that the transfer agent for the company would not transfer the shares.
On the basis of the facts presented, this Division is unable to conclude that the aforementioned shares may be transferred without prior registration under the Securities Act of 1933.
 Sincerely yours,
 John Heneghan
 Assistant Chief Counsel.

THE LAW
Certificate JU243 is a security within the definition of the Securities Act. § 2(1). Section 5 of the Securities *432 Act makes it unlawful for a security to be offered for sale in interstate commerce unless a registration statement has been filed, or to be sold in interstate commerce unless the registration statement has become effective. However, exceptions to the provisions of § 5 are found in §§ 3 and 4. The security may be exempt under § 3 (e.g., securities of governmental agencies) or the transaction may be exempt under § 4 (generally private sales and those not involving a public offering).
When JU243 was originally issued it was issued under the exemption provided in § 4(2) and constituted unregistered letter stock. The subsequent attempted sale of this stock by the bank was not, by virtue of the bank's pledgee status, an exempt transaction under § 4(1). Securities and Exch. Comm'n v. Guild Films Co., 279 F.2d 485 (2 Cir.1960) cert. den. 364 U.S. 819, 81 S.Ct. 52, 5 L.Ed.2d 49 (1960). The "good faith" of the bank is irrelevant to this determination. Id. at 490. The bank was an underwriter within the meaning of § 2(11) and § 4(1). Id. at 489. Therefore, unless the transaction was exempted by some provision of § 4, its sale in interstate commerce without an appropriate registration statement would have been a violation of § 5. And R&T's participation in such violation in aiding by transferring the stock would have undoubtedly subjected it to action by the Securities and Exchange Commission. § 2(11); Melville v. Wantschek, 403 F. Supp. 439 (E.D.N.Y. 1975).[1]
Where reasonable grounds exist to believe that a proposed transfer might be a "wrongful" transfer under the Securities Act, a transfer agent is justified in refusing to make the requested transfer and requesting further information to show that the transfer can be made in accordance *433 with Federal law. Travis Investment Co. v. Harwyn Publishing Corp., 288 F. Supp. 519 (S.D.N.Y. 1968); Brannerton Corp. v. United States Corp. Co., 34 A.D.2d 1, 309 N.Y.S.2d 28 (App. Div. 1970).
It is the contention of the bank that the obligations of R&T are governed by state law and the U.C.C.[2] and that under §§ 8-406(1) and 8-401 of the U.C.C., R&T had a duty to transfer the stock.
In § 18 of the Securities Act, concurrent jurisdiction is given to the states with respect to the regulation of securities. The Congress has not preempted the field of security regulations, and state law which can be harmonized with the Securities Act may be enforced. See Edina State Bank v. Mr. Steak, Inc. 487 F.2d 640, 644 (10 Cir.1974) cert. den. 419 U.S. 883, 95 S.Ct. 150, 42 L.Ed.2d 123 (1974).[3] However, where state law cannot be harmonized *434 with, or would be in conflict with, the Securities Act, the state law must yield to the federal law. U.S. Const., Art. VI, § 2; see Perez v. Campbell, 402 U.S. 637, 649-652, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).
A transfer agent cannot be required by state law to transfer stock in violation of the Securities Act. Therefore, when a transfer agent has reasonable cause to believe that a transfer will be in violation of the Securities Act, it has a right to refuse to make the transfer until it has received an explanation or showing that the proposed transfer would not violate the Securities Act. Any state law which would require a transfer by a transfer agent having reasonable cause to believe that the act would be violated or which would create liability on the part of a transfer agent having reasonable cause to believe that the Securities Act would be violated for failure to make a transfer would be in serious conflict with the Securities Act and would violate the supremacy clause of the Constitution.[4]
In the instant case there could be no dispute that R&T had reasonable cause to believe that a transfer of certificate JU243 would be in violation of the Securities Act. As to this, reasonable men could not differ.
R&T had reasonable cause to believe that this was unregistered letter stock as to which there was no change of status as would justify the application of any other of the exemptions contained in § 4. It had been advised at the time the certificate was issued that it was letter stock, it had received an investment letter from the record owner, it had a stop order in its files and it had been alerted by *435 National that such stock should be stamped with a restrictive legend and returned.[5]
Defendant R&T's motion for summary judgment is granted. Plaintiff bank's motion for summary judgment is denied.
NOTES
[1] Indeed, had R&T made the transfer, not only would the bank have been in violation of the Securities Act, but the broker might also have been in violation. Quinn & Co. v. S.E.C., 452 F.2d 943 (10 Cir.1971) cert. den. 406 U.S. 957, 92 S.Ct. 2059, 32 L.Ed.2d 344 (1972).
[2] The U.C.C. became effective in New Jersey on January 1, 1963 (N.J.S.A. 12A:10-106) and became effective in Delaware on June 30, 1967 (6 Del. Code Annot. § 10-101). The conflicts of law questions have been decided by Judge Matthews in Welland Investment Corp. v. First Nat. Bank of Jersey City, 81 N.J. Super. 180 (Ch. Div. 1963). In that case it was held that the obligations of a New Jersey transfer agent are the same as that of the issuer. Id. at 187. And it was further held that the obligations of the issuer are to be determined by the law of the incorporator's state, which in that case was Delaware. Ibid.

Although the Securities Act is mentioned in Welland, it is not discussed and does not appear to have been considered. It therefore cannot be considered as authority as to the supremacy question. Because federal law controls, the conflicts problems do not arise in the instant case.
[3] In Mr. Steak the court was able to harmonize the state and Federal law. U.C.C. requirements that a restrictive legend be placed on the certificate were held enforceable although Federal law did not require a legend. In that situation, the creation of liability for failure by an issuer to note the restriction did not conflict with the disclosure objectives of the Securities Act but, to the contrary, strengthened it. The liability of the issuer for failure to affix a restrictive legend does not arise in the instant case because the U.C.C. was not in effect in Delaware at the time of the issuance of JU243.
[4] It is probable that § 8-401 of the U.C.C. can be harmonized with the Securities Act by a construction of § 8-401(1) (c) which would consider a possible violation of the Securities Act as an adverse claim. See Folk, "Article 8: A Premise and Three Problems," 65 Mich. L. Rev. 1379, 1408 (1967). However, in the instant case, such a determination need not be made.
[5] R&T probably also had reasonable cause to believe that the record owner Valianos was an issuer for the purposes of § 2(11) so as to make this a secondary distribution which would be in violation of the Securities Act as long as the stock was not properly registered. R&T knew at the time that certificate JU243 was delivered for transfer that the record owner Valianos owned at least 19% of the National shares. See S.E.C. v. Culpepper, 270 F.2d 241, 246 (2 Cir.1959), where people owning 1 1/2% of the outstanding capital stock were held to be issuers under § 2(11) because of control.