SHEARSON LEHMAN HUTTON
HOLDINGS INC., Plaintiff,

v.

COATED SALES, INC., Defendant.

No. 88 Civ. 4073 (PNL).

United States District Court,
S.D. New York.

June 15, 1988.

Myerson & Kuhn, New York City (Lloyd S. Clareman, of counsel), for plaintiff.

Coudert Bros., New York City (Edwin S. Matthews, Jr., Carolyn T. Ellis, of counsel), for defendant.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

This is a motion for a preliminary injunction brought in great haste to obtain for plaintiff the opportunity to sell 1,400,000 shares of stock posted as collateral for a defaulted loan in a rapidly deteriorating market.

Plaintiff is Shearson Lehman Hutton· Holdings Inc. Defendant is Coated Sales, Inc. Shearson loaned money to Michael Weinstein who at the time was Chief Executive Officer of Coated. Weinstein posted his stock in Coated Sales as security for the loan.

Subsequent events revealed a likelihood of irregularities in Weinstein's management of Coated. Its auditors resigned. Newly-appointed auditors began an investigation into the accuracy of the company's financial records as to transactions apparently arranged or sanctioned by Weinstein. The Board of Directors removed Weinstein and instituted a special investigation.

After making some payments on his loan, Weinstein defaulted on a the remainder of $2.9 million telling Shearson he was unable to make any further payments. Shearson advised Coated of its intention to liquidate the stock pledged to it and requested that Coated advise its transfer agent that the stock was free to be transferred notwithstanding its restrictive legend. Coated refused to do so.

In the meantime, Coated had made public disclosure that it was investigating irregu-

larities in its books, that it believed there was a $6 million overstatement of assets and that as the investigation progressed substantially larger shortages might be found.

Coated's stock, which had traded at approximately $12 a share a few months ago, plummeted. When Shearson brought the action on Monday, June 13, it was trading at 1¾. By Tuesday evening when the preliminary injunction was heard, it had fallen again to approximately 75 cents. Shearson fears the stock price will continue to fall. The defaulted debt is in the amount of $2,965,000. At the current market, the 1,400,000 shares of stock are inadequate to cover the debt. Shearson fears that within a few more days they may become wholly valueless.

Shearson brings the action under Section 12A:8–401 of the New Jersey Uniform Commercial Code which requires the issuer of a security in registered form to register transfer upon request upon a showing that a rightful transfer has been made and that the security is appropriately endorsed.

Shearson contends that it will be irreparably harmed if Coated is not ordered to permit transfer of the shares. It contends it is likely to succeed on the merits as Coated has no legitimate basis for refusing to transfer the shares.

I find that Shearson is entitled to preliminary injunctive relief on both the first and second branch of the preliminary injunction test. *In re Feit & Drexler Inc.*, 760 F.2d 406, 415 (2d Cir.1985); *Norlin Corp. v. Rooney Pace Inc.*, 744 F.2d 255, 260 (2d Cir.1984); *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979).

■ Coated has failed to show any lawful basis for refusal to transfer the shares. It relies on the proposition that an issuer may refuse to permit transfer where it has reason to believe the transfer may be wrongful, supported by citation to *Charter Oak Bank & Trust Co. v. Registrar & Trans. Co., Inc.*, 141 N.J.Super. 425, 358 A.2d 505 (N.J.Super.Ct.Law Div.1976) and *Travis Investment Co. v. Harwyn Publishing Corp.*, 288 F.Supp. 519 (S.D.N.Y.1968). *See also DeWitt v. American Stock Trans-*

*fer Co.*, 433 F.Supp. 994 (S.D.N.Y.), *modified on other grounds*, 440 F.Supp. 1084 (S.D.N.Y.1977). The proposition is not disputed but it has no application to these facts. *Charter Oak* and *Travis* dealt with unregistered investment stock that could not be transferred without violating the strictures of the Securities Act of 1933. The transfer agents therefore refused to transfer and were upheld in that refusal.

Here, however, there is no such justification for Coated's refusal to allow transfer.

Although it is undisputed that Weinstein himself would face restrictions under the SEC's Rule 144 if he wished to sell, Rule 144(k) contains an express exception from those restrictions where "restricted securities [are] sold for the account of a person who is not an affiliate of the issuer ..." and other conditions are met. Upon a request for an interpretation of Rule 144(k) positing the very circumstances here presented, the SEC responded that a securities dealer which lends to customers against a pledge of restricted securities may sell the securities upon the customer's default without regard to the restrictions of Rule 144 (assuming certain conditions to be true that are not here disputed). *Morgan Stanley & Co., Inc.* (available November 30, 1984) (1984–1985 Transfer Binder) CCH Fed.Sec.L.Rep. at 77,849 (January 16, 1985). *See also Kaye, Scholer, Fierman, Hays & Handler* (available July 31, 1972) (1972–1973 Transfer Binder) CCH Fed.Sec. L.Rep. at 78,944 (August 23, 1972).

Defendant contends that the *Morgan Stanley* interpretation may be inapplicable to this case because the pledgor Weinstein possesses undisclosed insider information, a fact not present in the hypothetical case considered by the SEC. The SEC's interpretation focused not on the character of the pledgor but of the pledgee. It required only that the pledgee not have been an affiliate of the issuer for at least the preceding three months, that the combined holding periods of the pledgor and the pledgee total three years, and that the pledge arrangement be *bona fide*. Under those conditions the pledgee's free sale was permitted *even though the issuer might be*

*in default in its obligations to provide correct public information.* The pledgee was expressly exempted from the obligation to meet condition (c) of the Rule, to the effect that "there ... be available adequate correct public information with respect to the issuer of the securities." The character of the pledger was not relevant. Thus, if the pledge was bona fide, the pledgee on the defaulted loan was permitted to liquidate restricted stock that the pledgor could not have sold, even in the absence of current required public information about the issuer. The pledgee was not chargeable with the disabilities of the pledgor. In an earlier interpretation in *Kaye, Scholer* the Commission had clarified that the pledgee, rather than the pledgor, should be considered the "person for whose account the securities are to be sold" in filling out Form 144 with respect to such a transaction.

I recognize that Rule 144(k) is not a directive requiring the issuer to accept transfer. On the other hand, nor does Rule 144, given this exemption, provide any basis for the issuer to refuse transfer in these circumstances. Unlike *Charter Oak* and *Travis*, cited above, this is free stock in Shearson's hands.

Coated argues that its refusal is justified by the fact that Weinstein possesses inside information. Since the sale will be credited by Shearson to Weinstein's loan repayment, Coated argues it is as if Weinstein were selling. Since he is believed to have adverse inside information, he should not be permitted to sell. It is true that Weinstein may benefit from the sale by the reduction of his debt to Shearson. But that does not make it his sale. Nor does Coated cite precedent for refusal by the issuer to permit transfer on a sale by reason of its belief that the seller possessed inside information.

I realize that pledging and defaulting could be used as a device to avoid restrictions on the sale of stock and on the use of insider information. The SEC confronted that possibility in its adoption of Rule 144(k) and in the *Morgan Stanley* interpretation. Apparently in the interest of greater liquidity and of a safe harbor for lenders, it took this position. I should add furthermore that if this represents an attempt by Weinstein to avoid restrictions on the liquidation of his stock by using the device of pledging and defaulting, it is a singularly unsuccessfuly application of the strategy in that the stock has lost 95% of its value between pledge and liquidation.

Coated also argues that its refusal is designed to protect itself from liability. This argument is not convincing. If the liability it fears is for the misleading information which it previously reported to the public, it is exposed to such liability to all purchasers of its securities, not only those who purchase the securities that Weinstein pledged with Shearson.

Coated argues that such a sale should be forbidden because it will benefit Weinstein, by diminishing his liability to Shearson. That circumstance would be equally true if Shearson had purchased the securities from Weinstein, rather than receiving them as a pledge of collateral. In either case Shearson would be a victim of Weinstein's fraud. In either case Shearson would have a cause of action against Weinstein, and in either case the amount of Weinstein's liability to Shearson would be limited by the price Shearson obtained on resale. In neither case should Shearson be taxed with Weinstein's fraud on its attempt to limit its loss by selling off what Weinstein foisted on it.

Shearson bears no responsibility for the earlier frauds. Nor does Shearson possess any inside information. The frauds Weinstein may have committed and the inside information he may possess do not attach themselves to his shares in the hands of subsequent holders. There is no suggestion of any taint in Shearson's relationship with Weinstein, and no reason why Shearson which acquired those securities innocently should not be free to sell them.

In selling the securities in the public market, Shearson would have no advantage over those who purchased from it. Both sides would have equal access to the disclosures Coated has made as to the accuracy of its prior financial statements. Both

sides would be equally ignorant of the true financial picture of the company which its investigator has not yet uncovered.

\*    \*    \*

Even if the issue is not so clear in Shearson's favor as to support likelihood of success on the merits, Shearson nonetheless prevails on the second branch of the preliminary injunction test. The issue unquestionably furnishes a fair question for litigation and the balance of hardships tilt decidedly in Shearson's favor. Shearson is deprived by Coated's action of its status as a secured creditor. It bargained for security and loses that security as the result of Coated's refusal to allow it to transfer the stock. Given the rate at which the market value of the stock has fallen, every passing day threatens to wipe out Shearson's security. *See, e.g., Catherines v. Copytele,* 602 F.Supp. 1019, 1027 (E.D.N.Y.1985).

The harm suffered by Coated is vague and difficult to assess. As noted above, with respect to its own prior inaccurate disclosures, they expose it to liability for all transactions in its shares, not merely for these. If it wishes to avoid that liability, it should take steps to suspend all trading. As to Coated's shareholders, they are not harmed or affected by Shearson's sale of this stock. To the extent Coated professes to protect the public, that must be done by its disclosures of information. The public is not protected by the withholding of Shearson's shares from the marketplace.

I conclude that denial of an order would harm Shearson far more severely than Coated, its shareholders or the public would be harmed by the grant of the order permitting Shearson to sell.

A preliminary injunction is hereby granted.[1]

SO ORDERED.

---

**1.** Because of its urgency, the matter has been decided in haste, the action having been brought Monday evening, the issues heard Tuesday evening, and the case decided Wednesday morning, lest the market render the controversy moot.