Pat **CATIZONE**, Plaintiff,

v.

**MEMRY CORP.**, American Stock Transfer & Trust Co., and Neil E. Rogen, Defendants.

No. 91 Civ. 8023 (RLC).

United States District Court, S.D. New York.

July 25, 1995.

Arnold Davis, New York City, for Plaintiff.

Rubin, Hay & Gould, P.C., Framingham, Massachusetts (Rodney E. Gould) of counsel, for Defendant Neil E. Rogen.

Whitman & Ransom, Greenwich, Connecticut (James C. Riley, of counsel), for Defendants Memry Corp. and American Stock Transfer & Trust Co.

ROBERT L. CARTER, District Judge.

Defendants Memry Corp. ("Memry") and American Stock Transfer & Trust Co. ("AST & T") move for summary judgment on each count of plaintiff's complaint, with respect to their affirmative defense, and with respect to their counterclaim for interpleader. Defendant Neil E. Rogen moves for summary judgment on plaintiff's cause of action alleging that Rogen blocked the transfer of stock to plaintiff.

### I.  Background

Defendant Rogen founded defendant Memry in 1981, and he served as the chairman of Memry's board and an officer of Memry until October, 1986.  In March, 1983, Memry issued a certificate (the "certificate") to Rogen representing 100,000 shares of common stock and bearing the following legend:

> The securities represented hereby were issued in a transaction not registered under the Securities Act of 1933 in reliance on exemptions from registration under section 3(b) and 4(2) thereof and regulation D thereunder, and said securities may not be sold or transferred unless under an effective registration statement under said act or, in the written opinion of counsel acceptable to the company, exempt from the registration provisions of said Act.

(Riley Aff.Ex. 1.).

In 1984, in preparation for a public offering of Memry's stock, Rogen asked Pericles Constantinou to help locate an underwriter and arrange for financing during the regis-

tration process.  In November, 1984, Rogen gave Constantinou 240,000 shares of restricted stock in Memry which had been issued in Rogen's name, including those represented by the certificate.  Rogen insists that he gave Constantinou the shares in response to a threat by Constantinou to kill the public offering unless he received shares in Memry, while Constantinou has averred that he received the stock as compensation for the services he performed in connection with the offering.[1]  In March, 1987, Rogen commenced a lawsuit against Constantinou in New York state court seeking title to the shares.

On February 13, 1987, Constantinou gave plaintiff the certificate as collateral for a loan.  Constantinou subsequently defaulted on the loan, and in April, 1990, his counsel wrote to AST & T requesting that the certificate be cancelled and a new, unrestricted certificate be issued in Constantinou's name. (Letter from Gary Wolff to Debra McAuliffe of 4/27/90.)  In response, Memry requested an opinion letter stating that the transfer from Rogen to Constantinou was exempt from the registration provisions of the Securities Act of 1933 (the "1933 act").  Counsel for Constantinou and Catizone then provided a letter stating that the transfer from Rogen to Constantinou fell under § 4 of the 1933 act and was thus exempt from registration requirements.  (Letter from Wolff to Memry of 6/21/90 at 2, Markham Aff.Ex. A.)  On July 10, 1990, Memry requested an additional opinion letter identifying the provision of act under which the transaction was exempt and explaining the basis for the exemption.  (Letter from Edwin T. Markham to Wolff of 7/10/90 at 1, Markham Aff.Ex. B.)  No such explanation was provided.  In June, 1991, plaintiff tendered the certificate and Rogen's stock transfer power to defendant AST & T, Memry's transfer agent, and demanded that the shares be transferred to plaintiff.  (Letter from Arnold Davis to AST & T of 6/24/91,

---

**1.** Constantinou later pleaded guilty to acting as an undisclosed underwriter in the public offering and to attempting to manipulate the price of the stock in the aftermarket.  (Riley Aff. Ex. 7 & 9.) The SEC charged Rogen with violating § 17(a) of the Securities Act of 1933 and § 10(b) of the Securities Exchange Act of 1984 in connection with his transfer to Constantinou, and Rogen and

the SEC entered into a consent decree in 1992. (Riley Aff. Ex. 10 & 11.)  When the Memry board learned of Rogen's transfer to Constantinou, they terminated his employment contract and his position as chief executive officer of the corporation and demanded that he resign from the board. (Riley Aff. Ex. 4 at 8.)

Catizone Aff.Ex. B.) Memry again refused the request, and plaintiff commenced this action.

## II. Choice of Law

Plaintiff relies on New York law, while defendants assert that Delaware law applies. Since this is a diversity action, the court will apply the choice of law rules of New York, the state in which the court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York has adopted section 8–106 of the Uniform Commercial Code, which requires that in actions regarding the rights and duties of an issuer of securities with respect to registration of transfer of a certificated security a court should apply the substantive and choice of law rules of the jurisdiction in which the issuer is incorporated. N.Y.U.C.C. § 8–106 (McKinney 1990); *see also DeWitt v. American Stock Transfer Co.*, 433 F.Supp. 994, 1000 n. 3, *modified on other grounds*, 440 F.Supp. 1084 (S.D.N.Y.1977) (Goettel, J.). Memry was incorporated in Delaware, which has also adopted section 8–106. Del.Code Ann. tit. 6, § 8–106 (1993). Therefore, the court will apply Delaware law regarding the rights and duties of Memry with respect to registration of the transfer.

## III. Summary Judgment Standard

■ Defendants will be entitled to summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Rule 56(c), F.R.Civ.P. They can carry their burden "merely by pointing out that there is an absence of evidence to support the non-moving party's claims," *Pressman v. Estate of Steinvorth*, 860 F.Supp. 171, 176 (S.D.N.Y.1994) (Carter, J.) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)), and then plaintiff will be able to defeat the motion only by "set[ting] forth specific facts showing that there is a genuine issue for trial." Rule 56(e), F.R.Civ.P. For the purposes of these motions for summary judgment, the court will view the facts in the light most favorable to the plaintiff. *Matsu-*

*shita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

## IV. Duty to Register Transfer

Under Del.Code Ann. tit. 6, § 8–401 (1993), an issuer of a security has a duty to register the transfer of that security upon request if:

(a) The security is indorsed or the instruction was originated by the appropriate person or persons . . . ;

(b) Reasonable assurance is given that those indorsements or instructions are genuine and effective . . . ;

(c) The issuer has no duty as to adverse claims or has discharged the duty . . . ;

(d) Any applicable law relating to the collection of taxes has been complied with; and

(e) The transfer, pledge or release is in fact rightful or is to a bona fide purchaser.

Del.Code Ann. tit. 6, § 8–401(1) (1993); *see also Bender v. Memory Metals, Inc.*, 514 A.2d 1109 (Del.Ch.1986). The same standard governs a transfer agent's duty. Del.Code Ann. tit. 6, § 8–406 (1993); *see also DeWitt*, 433 F.Supp. at 1000. Defendants Memry and AST & T argue that plaintiff has not shown that the transfer from Rogen to Constantinou was exempt from the registration requirements of the 1933 act and that therefore he has not shown that the transaction was rightful.

■ The subject shares were not registered when they were issued to Rogen by Memry, so a transfer by Rogen would be permissible only if it fell under one of the exemptions in the Securities Act. 15 U.S.C. § 77e (1988). The transaction occurred in connection with a public offering, so it is not exempt under § 4(2) of the act. 15 U.S.C. § 77d(2) (1988). Section 4(1) of the act exempts sales made by "any person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(1) (1988). An underwriter is

any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a

participation in the direct or indirect underwriting of any such undertaking.... 15 U.S.C. § 77b(11) (1988). Rogen purchased the subject shares from Memry, the issuer, and a year and a half later transferred them to Constantinou, in connection with the distribution to the public of Memry's stock. Thus, Rogen was an underwriter under the meaning of the act, and the transaction would be exempt only if it fell under the safe harbor provision of Rule 144.

Defendants claim that the transaction did not fall under the safe harbor provision because, among other reasons,[2] no Form 144 notice was filed, as required by Rule 144(h), 17 C.F.R. § 230.144(h) (1994), and the transaction exceeded the amount limitation of Rule 144(e), 17 C.F.R. § 230.144(e) (1994), under which the transaction cannot exceed the greater of 1) one percent of outstanding shares, or 2) the average weekly volume of trading during the month prior to the transaction. Plaintiff concedes that no Form 144 notice was filed. (Wolff Aff. p. 5.) Furthermore, the prospectus shows that there were at most approximately 6,295,500 shares outstanding after the public offering, (Riley Aff. Ex. 2 at 4), so the sale constituted more than 1% of the outstanding shares. Plaintiff argues, however, that a genuine dispute of fact exists regarding whether the volume limitation was violated because "[n]o particulars have been disclosed from which to determine whether the charge has substance." (Wolff Aff. at 5.) This assertion is not sufficient to raise a genuine issue of fact regarding whether the amount limitations were in fact exceeded. Therefore, plaintiff has not met its burden of showing that a genuine dispute of fact exists regarding whether the transaction was in fact rightful.

Defendants argue that Rogen was also an issuer not entitled to a § 4(1) exemption because as the chairman of the board of Memry, its chief executive officer ("CEO"), and owner of approximately one-third of its shares immediately prior to the public offer-

ing, he exercised control over the corporation sufficient to fall within the definition of issuer in § 2(11) of the act, which includes "any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer." There is some confusion in the law whether the § 2(11) definition of issuer, which by its terms is limited to the paragraph in which underwriters are defined, should be used to determine which issuers are exempt from the registration requirements under § 4(1). Some courts have indicated that only the narrower definition of issuer in § 2(4) should be used for that purpose, *see, e.g., Wassel v. Eglowsky,* 399 F.Supp. 1330, 1362 n. 59 (D.Md.1975) (noting that although control person was an issuer under § 2(11), he was not an issuer under § 2(4) and thus could not take an exemption under § 4(2)), *aff'd,* 542 F.2d 1235 (4th Cir. 1976), while others use the broader definition in § 2(11). *See, e.g., Andrews v. Blue,* 489 F.2d 367, 374 (10th Cir.1973) (finding that defendants were exempt from § 4(1) because they controlled the issuer); *Leiter v. Kuntz,* 655 F.Supp. 725, 728 (D.Utah 1987) (same). The court has already determined that Rogen was an underwriter and could not qualify for an exemption. It declines, therefore, to decide this issue.

■ Since the transfer violated the 1933 act, it cannot be considered rightful, and defendants Memry and AST & T were under no duty to register the transfer.[3] *Travis Inv. Co. v. Harwyn Publishing Corp.,* 288 F.Supp. 519, 526–27 (S.D.N.Y.1968) (Bonsal, J.) (company was justified in refusing to transfer shares while it sought assurances that the transfer would not violate the 1933 act); *Melville v. Wantschek,* 403 F.Supp. 439 (E.D.N.Y.1975) (transfer agent was not liable for failing to transfer stock where transfer might subject it to action by SEC); *Charter Oak Bank & Trust Co. v. Registrar & Transfer Co.,* 141 N.J.Super. 425, 358 A.2d 505, 510

---

2. Defendants also assert that the transaction did not satisfy the holding period requirement of Rule 144(d) and that in violation of Rule 144(f) the securities were not sold in a broker's transaction.

3. Plaintiff argues that a genuine issue of fact exists regarding whether his counsel's opinion letter was sufficient. Since the transfer was wrongful, however, an opinion letter could not create a duty to transfer.

(Law Div.1976) ("[W]hen a transfer agent has reasonable cause to believe that a transfer will be in violation of the Securities Act, it has a right to refuse to make the transfer until it has received an explanation or showing that the proposed transfer would not violate the Securities Act."); *see also Shearson Lehman Hutton Holdings Inc. v. Coated Sales, Inc.,* 697 F.Supp. 639, 640 (S.D.N.Y. 1988) (Leval, J.) (stating that the court did not dispute the proposition that an issuer may refuse to permit transfer where it has reason to believe that the transfer may be wrongful, for example where the transfer would violate the 1933 act); *DeWitt,* 433 F.Supp. at 1000 (failure to transfer is justified if issuer and transfer agent have reasonable grounds for failure to transfer).

■ Plaintiff argues that at the time that he received the pledge, he knew nothing about Rogen's transfer to Constantinou and had no reason to suspect an infirmity in the transaction. (Catizone Aff. at p. 3.) Although plaintiff does not elaborate on this claim, the court will construe it as a claim that he was a bona fide purchaser. The law is uncertain regarding whether defendants would be under a duty to transfer the stock if plaintiff were a BFP. Although § 8–401 indicates that such a duty would exist, a number of courts have found that a company's right not to register a transfer in violation of the 1933 act exists even where the person seeking transfer acted in good faith. *See, e.g., Travis Inv. Co.,* 288 F.Supp. at 526 ("[E]ven if plaintiff acted in good faith, Harwyn could refuse to register the shares upon presentation if it had reasonable grounds for doing so ... such as having received information of a possibly wrongful transfer...."); *Charter Oak Bank & Trust Co.,* 141 N.J.Super. at 434, 358 A.2d 505 (finding that Supremacy Clause prohibits state law from imposing a duty to transfer in violation of federal law). The court need not reach this issue because the plaintiff was not a BFP.

A pledgee will be a BFP where he took the security for value in good faith and without notice of adverse claims. Del.Code tit.

6, § 8–302 (1993). " 'Good faith' means honesty in fact in the conduct or transaction concerned." Del.Code Ann. tit. 6, § 1–201(19) (1993). "An '[a]dverse claim' includes a claim that a transfer was or would be wrongful or that a particular adverse person is the owner of or has an interest in the security." Del.Code Ann. tit. 6, § 8–302 (1993).

Because the transaction between Rogen and Constantinou was wrongful, if Catizone knew of the wrongfulness of the transaction he was on notice of adverse claims to the security. Although Catizone denies such knowledge, he need not have actual knowledge to have received sufficient notice of the wrongfulness—it will be enough if "from all the facts and circumstances known to him at the time in question he ha[d] reason to know that it exist[ed]." Del.Code Ann. tit. 6, § 1–201(25) (1993). Catizone does not dispute that Rogen's name was on the face of the certificate or that there was a legend on the certificate indicating that the securities were restricted. Thus, Catizone had enough information to conclude that Rogen's sale of the stock was prohibited unless it was exempt from the registration requirements of the act. Catizone also admits that he saw the prospectus prepared in connection with the public offering of Memry's stock. (Catizone Aff. at p. 4.) The prospectus states that Rogen was the CEO of the company and chairman of the board, (Riley Aff.Ex. 2 at 26), establishing his involvement with the public offering. Moreover, Catizone had been closely acquainted with Constantinou for many years prior to the transaction [4] and knew at least that Constantinou served as a "consultant" to the company while it was preparing its public offering. (Catizone Aff. at pp. 3–4.) In fact, at Constantinou's suggestion Catizone bought 15,000 shares in Memry in 1984 at the offering price, (Catizone Dep., Riley Aff.Ex. 12 at 115), pursuant to an agreement in which the stock was "parked" in Catizone's name but losses were borne by Constantinou and profits were split

---

4. Catizone and Constantinou met in 1971 when Catizone worked at the brokerage firm run by Constantinou and have stayed in touch ever

since. (Catizone Dep., Riley Aff. Ex. 12 at 50, 69, 71.)

equally between Catizone and Constantinou.[5] (Catizone Dep., Riley Aff. Ex. 12 at 152–55.) Therefore, Catizone must have known that Constantinou's "consultancy" involved the sale of shares through the public offering. Given that the transaction between Rogen and Constantinou occurred around the time of the public offering and that both were instrumental in effecting the offering, Catizone had enough information to at least suspect that the transaction was related to the offering. Furthermore, Catizone could tell from the prospectus that the sale of 100,000 shares of Memry stock constituted far more than 1% of Memry's outstanding shares, making it unlikely that the transaction was exempt from the registration requirements under Rule 144. Given Catizone's extensive experience with securities,[6] he was thus familiar with enough facts and circumstances to at least suspect that the transaction between Rogen and Constantinou was wrongful. Catizone could not both turn a blind eye to the suspicious circumstances and still be a bona fide purchaser entitled to require Memry to record the transfer to him.

Plaintiff argues that even if infirmities existed in the transaction between Rogen and Constantinou, the transaction between Constantinou and Catizone was in fact rightful, and therefore Memry must register the transfer. Plaintiff's sole support for this proposition is *Shearson Lehman Hutton Holdings Inc. v. Coated Sales, Inc.,* 697 F.Supp. 639 (S.D.N.Y.1988) (Leval, J.), in which the CEO of Coated Sales, Inc. ("Coated") pledged his stock as security for a loan from Shearson Lehman Hutton Holdings, Inc. ("Shearson Lehman"). The CEO later defaulted on the loan, and when Shearson Lehman requested transfer of the stock free of a restrictive legend, Coated refused, arguing that the CEO had been guilty of irregularities in managing the company and that thus the transfer was wrongful. The court accepted the proposition that a company could refuse to transfer stock when the transfer would violate the 1933 act, but it

found that no such justification underlay Coated's refusal to transfer, because the sole transfer at issue was exempt under Rule 144(k). *Shearson Lehman Hutton Holdings Inc.,* 697 F.Supp. at 640. The court consequently ruled that Coated must transfer the stock. *Id.* The absence of a justification for the refusal to transfer distinguishes *Shearson Lehman* from the instant situation. Here, registration of the transfer between Rogen and Constantinou would violate the 1933 act, and therefore defendants were justified in refusing to register the transfer, regardless of whether the transaction between Constantinou and Catizone fell under Rule 144(k).

Plaintiff contends that defendants should not be allowed to refuse to register the transfer because they permitted a sale of restricted shares issued to Dr. L. McDonald Schetky, who had served as a director and president of the Memry. Plaintiff has not established, however, that Memry permitted the transfer of these shares. On the contrary, plaintiff bases his account of the transactions involving the Schetky shares on the minutes of a special meeting of the board of Memry, at which the company's counsel stated that it had refused to provide an opinion that the transfer was exempt from registration. (Riley Aff. Ex. 4 at 4.)

## V. Breach of Pledge Agreement

▮▮▮▮ Plaintiff alleges in his third cause of action that there was a valid pledge agreement between plaintiff and Constantinou, that defendants were aware of that agreement, that Rogen blocked and delayed the transfer of the shares to Catizone, thereby bringing about a breach and preventing performance of the pledge agreement, and that plaintiff was damaged because the shares diminished in value. Under New York law, the elements of a cause of action for intentional interference with contract are "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of

---

5. Constantinou was later convicted of illegal underwriting with respect to this stock. (Constantinou Dep., Riley Aff. Ex. 12 at 97.)

6. Catizone was a registered securities broker for approximately ten years, before the SEC barred him from associating with any securities brokers or dealers or any investment company. (Catizone Dep. p. 10.)

the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages." *Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 595 N.Y.S.2d 931, 934, 612 N.E.2d 289, 292 (1993). To satisfy the third element, "the interference must be intentional and not incidental to some other lawful purpose." *Health–Chem Corp. v. Baker,* 915 F.2d 805, 809 (2d Cir.1990). Since defendants Memry and AST & T were justified in refusing to register the transfer, any interference by them with the pledge agreement was incidental to a lawful purpose and was thus not intentional. Therefore, summary judgment must be granted on plaintiff's third cause of action against defendants Memry and AST & T.

## VI. *Rogen's Motion for Summary Judgment*

Catizone alleged in the complaint that "[u]pon information and belief, defendant Rogen issued instructions blocking and delaying the transfer of the subject shares to plaintiff." Rogen denies that he has done so and asserts that Catizone has presented no evidence to support his allegation. In response, Catizone points to a letter from Peter Neger, Rogen's attorney, to Gary Wolff, Catizone's attorney, stating, in relevant part,

> In the period following Whitman & Ransom's June 28 letter you and I have commenced discussions concerning an amicable resolution of any disputes between our respective clients which would obviate the need for transferring the subject certificate. Because these discussions are currently on-going, we have agreed that Memry Corp. may extend until August 15, 1990 the last day for Rogen to act under Delaware U.C.C. Section 8–403 to halt Memry's rescission of its stop transfer order respecting the subject certificate (assuming, of course, that Memry Corp. is also satisfied that the transfer will not violate the securities laws).

(Letter from Peter Neger to Gary Wolff of 7/19/90, at 2, Wolff Aff. Ex. H.) Catizone asserts that this letter "tacitly refer[s] to a negotiation between their respective clients structured in the fashion of that between Schetky and Barbella the details of which were well known to Memry." (Pl.'s Mem. in Opp'n to Defs.' Mots. for Summ.J. at 6.)

The 7/19/90 letter does not serve to establish that Rogen blocked the transfer of the certificate. On the contrary, it establishes that Rogen engaged in settlement discussions regarding his adverse claim to the subject certificate, which surely cannot be construed as blocking. More importantly, as the letter acknowledges, the transfer was blocked by Memry's belief that transfer would violate the 1933 act, not by Rogen's assertion of an adverse claim, and Catizone has not even attempted to show that Rogen attempted to influence Memry's opinion regarding the legality of the transfer. Therefore, Catizone has not set forth any specific facts indicating that there is a genuine issue for trial, and summary judgment must be granted in favor of Rogen.

## VII. *Interpleader Counterclaim*

■ Defendants Memry Corp. and AST & T, claiming that they have no interest in the securities underlying the certificate but asserting that they cannot determine who is the rightful owner of the securities, have brought a counterclaim in interpleader against Catizone and Rogen. They now seek summary judgment on that counterclaim. Neither Rogen nor Catizone has responded to the motion for summary judgment on the interpleader counterclaim.

Interpleader actions generally proceed in two stages. In the first, the court determines whether it has jurisdiction and whether it will exercise that jurisdiction, and in the second the court adjudicates the merits of the adverse claims. *Avant Petroleum, Inc. v. Banque Paribas,* 853 F.2d 140, 143 (2d Cir.1988). The case is currently in the first stage, so the court must first determine whether it has jurisdiction to take the case. Memry and AST & T do not specify whether they seek interpleader under 28 U.S.C. § 1335, known as "statutory interpleader," or under Rule 22, F.R.Civ.P., known as "rule interpleader." Statutory interpleader is available where the property is valued at $500 or more and the competing claimants are of diverse citizenship. 28 U.S.C. § 1335

(1988). Rule interpleader is available where the property is valued at $50,000 or more and the stakeholder's citizenship is diverse to that of all the defendants. *Truck–a–Tune, Inc. v. Re,* 23 F.3d 60, 62 (2d Cir.1994). Memry is a citizen of Delaware and Connecticut. AST & T is a citizen of New York. Catizone is a citizen of New Jersey. Rogen is a citizen of Massachusetts. Therefore, the case can proceed under both rule and statutory interpleader.

However, interpleader will not be available unless there are two or more adverse claimants to the disputed shares, *Bradley v. Kochenash,* 44 F.3d 166, 168 (2d Cir.1995), and the party seeking interpleader bears the burden of establishing that an interpleader action is necessary. *Interfirst Bank Dallas, N.A. v. Purolator Courier Corp.,* 608 F.Supp. 351, 353 (N.D.Tex.1985). The adverse claims on which Memry and AST & T rely in their interpleader counterclaim are Catizone's demands that Memry and AST & T register transfer and a lawsuit that Rogen brought in New York state court in 1987 against Constantinou, alleging that Constantinou extorted the stock power from him and demanding rescission of the transfer. It does not appear that there are in fact two adverse claims to the shares in light of today's finding that Memry and AST & T are under no obligation to register the transfer.[7] Therefore, the court will deny summary judgment on the counterclaim.

*VIII. Order*

Summary judgment is granted in favor of defendants Memry and AST & T on plaintiff's first cause of action alleging violation of section 8–401 of the New York Uniform Commercial Code. Summary judgment is granted in favor of defendants Memry and AST & T on plaintiff's second cause of action alleging that Memry breached its mandatory duty to register the transfer. Summary judgment is granted in favor of defendants Memry and AST & T and Rogen on plaintiff's third cause of action alleging obstruction of the pledge agreement between Constantinou and plaintiff. Summary judgment is denied on the interpleader counterclaim.

**IT IS SO ORDERED.**

---

7. Furthermore, over two and a half years have passed since the parties submitted their papers on this case and the state court case may well have been resolved in the meantime. The court has twice requested counsel for Memry and AST & T to provide the court with information regarding the status of the state court case. Counsel has informed the court orally that the case is inactive and may have been dismissed, but it has ignored the court's request for written confirmation of the case's status, indicating to the court that these defendants do not feel particularly threatened by Rogen's claim.