DEAN WITTER REYNOLDS, INC., Respondent, v SELECTRONICS, INC., et al., Appellants, et al., Defendants.

First Department, March 2, 1993

### APPEARANCES OF COUNSEL

*Philip G. Spellane* of counsel *(Harris Beach & Wilcox,* attorneys), for Selectronics, Inc., appellant.

*Marcia R. Rich* of counsel *(Howard Darby & Levin,* attorneys), for Mellon Bank, N.A., appellant.

*Paul Dutka* of counsel *(Michael S. Popok* with him on the brief; *Skadden, Arps, Slate, Meagher & Flom,* attorneys), for respondent.

### OPINION OF THE COURT

MILONAS, J. P.

Plaintiff Dean Witter Reynolds, Inc. seeks to recover its alleged losses from the sale of certain stock that was rejected for clearance by the Depository Trust Company. In that regard, defendant BIL Banque Internationale a Luxembourg (Suisse) S.A. deposited five stock certificates of defendant Selectronics, Inc. into its brokerage account with plaintiff. In accordance with BIL's instructions, Dean Witter began selling the Selectronics shares, which appeared to be fully negotiable, and remitted the proceeds to its client. However, the securities clearing house where the shares were sent for reregistration by Selectronics' transfer agent, defendant Mellon Bank, refused the certificates and returned them to plaintiff with, for

the first time, restrictive legends manifested on their face. After BIL rebuffed Dean Witter's efforts to recoup the funds previously forwarded, plaintiff commenced this action against BIL, Selectronics, Mellon Bank and others.

The subject stock, it should be noted, had been initially transferred by Selectronics to defendant Stephen R. Nagel, a director and officer of the company, in reliance upon the "private placement" exemption authorized under section 4 (2) of the Securities Act of 1933 as amended (15 USC § 77d [2]). Selectronics failed to place any markings on the certificates to alert subsequent transferees that the securities were unregistered and had been distributed in a private placement. Although Nagel later exchanged the certificates for the five common stock securities in question here, Selectronics again chose not to file a registration statement or record restrictive legends on the shares. The stock, which was pledged by Nagel as security for a loan from defendant F.I.G. Corporation, ultimately came into the possession of BIL and then was delivered to Dean Witter.

In granting plaintiff's motion for partial summary judgment, the Supreme Court determined that defendants were liable under UCC 8-204 for neglecting to indicate on the face of the stock certificates any restrictions on transfer and remanded the matter for an immediate assessment of damages. Although the Judge proceeded to grant the motion for reargument by Selectronics and Mellon Bank, she modified her prior decision only to the extent of permitting discovery as to whether Dean Witter lacked actual knowledge of the restrictions as required by UCC 8-204. On appeal, defendants urge that the complaint should have been dismissed since UCC 8-204 does not create a cause of action for the failure to legend stock certificates, and, in any event, this provision applies only to restrictions imposed by the issuer and not by law, and any limitation on transferability resulting from the original private placement was due to the 1933 Act and had expired by the time of plaintiff's sale of the shares.

Section 8-204 of the Uniform Commercial Code states that "[a] restriction on transfer of a security imposed by the issuer even though otherwise lawful is ineffective against any person without actual knowledge of it unless (a) the security is certificated and the restriction is noted conspicuously thereon". Notwithstanding that Official Comment 6 accompanying this provision observes that it "deals only with restrictions imposed by the issuer and restrictions imposed by statute are

not affected", the fact is that, contrary to defendants' contention, the restrictions involved here were established by the issuer and not by any statute. No State or other law regulated the bestowal of Selectronics stock to Nagel so that a transferee might have discovered the existence of restrictions simply by referring to the applicable statute. The relevant Federal legislation certainly does not require the imposition of restrictions but merely authorizes issuers and transferors to register their securities or, alternatively, qualify for statutory exemptions. Thus, while a party desiring to invoke a specified exemption may be compelled to place restrictions on transfer, it is not the securities law that imposes the restrictions. Rather, it is the issuer, by electing to rely upon an exemption instead of registering the securities in question, that makes the operative choice (see, 7 Hawkland, Uniform Commercial Code § 8-204:02, at 137).

Pursuant to the 1933 Act, an issuer is prohibited from selling a security unless it is registered with the Securities and Exchange Commission or an exemption from such registration is authorized (see, 15 USC § 77e). Selectronics could have chosen to file a registration statement for Nagel's shares, which would have rendered that stock freely tradeable, yet opted to exempt the securities from registration by making use of the private placement exemption. It is true that although the availability of an exemption under 15 USC § 77d (2) does not require that certificates be affixed with notification of the restriction (see, Edina State Bank v Mr. Steak, 487 F2d 640, cert denied 419 US 883; DeWitt v American Stock Transfer Co., 440 F Supp 1084), "the presence or absence of an appropriate legend will be regarded as a factor in considering whether the circumstances surrounding the offering are consistent with the exemption for a non-public offering" (Edina State Bank v Mr. Steak, supra, at 644). As the court explained therein (supra, at 644-645): "We cannot agree that the absence of a requirement for a notation of the restriction in the federal statute overrides § 8-204 under the doctrine of preemption. As further discussed below we feel that this important provision of the Code may be read in harmony with the federal statute. Both regulations can be enforced without impairing federal superintendence of the field and thus the state statute need not give way * * * We feel the Securities Act shows no intent to prevent such significant regulation by state law * * * Congress itself adopted the Code provision in § 8-204 for the District of Columbia some time after its enactment of the

Securities Act * * * We are satisfied the federal statute should not be held to override § 8-204."

Defendants, however, insist that whether Nagel first obtained his stock in a private placement is irrelevant since the only restriction existing at the time of the sale was through rule 144 (k) under the 1933 Act (17 CFR 230.144 [k]). This rule, significantly, does not impose any restrictions on a security but simply allows the sale "to the public of unregistered securities provided that three years have elapsed from the time the securities were acquired from the issuer or an affiliate of the issuer, and provided that the seller is not an affiliate of the issuer and was not an affiliate of the issuer for at least three months prior to the time of sale." *(United States v Sprecher,* 783 F Supp 133, 158-159.) As the Supreme Court correctly observed, Nagel had been a director and officer of Selectronics since 1983 and controlled a large number of its shares, so he was clearly an affiliate of Selectronics. Consequently, rule 144 (k) is simply inapplicable to his stock. Indeed, like the issuer in *Edina State Bank v Mr. Steak (supra),* Selectronics made use of the 1933 Act's private placement exemption to avoid having to register the securities.

Plaintiff "as pledgee was among the persons protected generally by § 8-204 against a restriction not conspicuously noted on the security, except as to a person with actual knowledge. The wrongful refusal to transfer gave rise to a right to sue as for conversion by the * * * transferor" *(Edina State Bank v Mr. Steak, supra,* at 644; *see also, DeWitt v American Stock Transfer Co.,* 433 F Supp 994, 1000; *Gasarch v Ormand Indus.,* 346 F Supp 550, 552). Thus, UCC 8-204 does create liability for damages upon an issuer and/or transfer agent who omit to include restrictions on the face of securities, and there is no merit to defendants' argument that plaintiff has no cause of action against them. Accordingly, the Supreme Court's decision was in all respects proper.

Order of the Supreme Court, New York County (Beatrice Shainswit, J.), entered on May 8, 1991, which granted defendants' motions for reargument and, upon reargument, vacated its prior order of February 11, 1991 but adhered to its previous determination denying defendants' motions for summary judgment dismissing the complaint, should be affirmed, with costs and disbursements.

ELLERIN, ROSS and ASCH, JJ., concur.

Order of the Supreme Court, New York County, entered on

May 8, 1991, which granted defendants' motions for reargument and, upon reargument, vacated its prior order of February 11, 1991 but adhered to its previous determination denying defendants' motions for summary judgment dismissing the complaint, is affirmed, with costs and disbursements.