A00A0140. NEIDIGER/TUCKER/BRUNER, INC. v. SUNTRUST BANK.
(530 SE2d 18)

ELLINGTON, Judge.

In this action, Neidiger/Tucker/Bruner, Inc. ("NTB"), a broker-dealer, sought damages from SunTrust Bank, as transfer agent for Allegiant Physicians Services, Inc., in connection with the sale of certain shares of Allegiant stock pledged by two customers of NTB as collateral for margin trading accounts. The trial court dismissed NTB's complaint against SunTrust for failure to state a claim. NTB appeals and contends that the trial court erred in concluding that SunTrust owed no common law or statutory duty to NTB. We agree and reverse.

A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within

---

[5] Compare id.

the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Footnotes omitted.) *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).

When examining a complaint to determine whether the facts asserted therein state a claim for relief under which the plaintiff may recover, it is not necessary to find that the complaint is perfect in form or that it sets out all of the issues with particularity. It is only necessary that the complaint place the defendant on notice of the claim against him.

(Citations and punctuation omitted.) *Andemeskel v. Waffle House*, 227 Ga. App. 887 (2) (490 SE2d 550) (1997).

Construed in favor of NTB as the nonmovant, the facts are assumed to be as follows: two companies controlled by Dr. Jay Gilon, Los Angeles Neurophysical Center, Inc. ("LAN") and Western Financial Research Corporation, each purchased 500,000 shares of Allegiant stock directly from Allegiant, the "issuer" of the stock as defined by the Georgia Commercial Code. See OCGA § 11-8-201. LAN and Western did not pay for the Allegiant stock but gave Allegiant promissory notes totaling $1 million. LAN and Western agreed not to sell, pledge or hypothecate the Allegiant shares until the notes were paid in full and the shares were registered under applicable securities laws. SunTrust had actual knowledge of the restrictions on the transfer of the LAN and Western shares. Acting as Allegiant's "transfer agent," SunTrust prepared stock certificates for the LAN and Western shares which did not bear a legend referring to the restrictions on the transfer of those shares. In violation of their agreement with Allegiant and the restrictions on transfer, LAN and Western pledged the shares and delivered the stock certificates to NTB as collateral for margin trading accounts. Before accepting the stock as collateral, NTB called SunTrust to confirm that there were no restrictions on transfer, and a representative of SunTrust said there were none. NTB sold 310,000 of the pledged shares to cover margin calls on the LAN and Western accounts. SunTrust then informed NTB that the shares were unregistered, that there were restrictions on the shares and that Allegiant had issued a stop trans-

fer order. NTB had to spend $508,000 to buy enough shares of Allegiant on the open market to cover the shares it had contracted to sell before it learned of the restrictions and stop transfer order.

NTB framed its complaint in four counts: (1) a claim for general negligence; (2) a claim for negligent misrepresentation for SunTrust's failure to note the transfer restrictions on the certificates and its failure to disclose restrictions in response to the telephone inquiry; (3) a claim for conversion for SunTrust's refusal to register the transfer of the shares NTB sold to cover the margin calls; and (4) a claim for violation of OCGA § 11-8-204 for SunTrust's refusal to register the transfer of the shares. As to the simple negligence and negligent misrepresentation claims, the trial court found that SunTrust owed no duties directly to NTB in that it was not among the limited class of persons whom SunTrust was actually aware would rely on the information SunTrust prepared in its professional capacity. As to the conversion claim, the trial court found that NTB did not allege an essential element: an act of dominion by SunTrust over NTB's property. As to the OCGA § 11-8-204 claim, the trial court found that the section does not impose any duty on a transfer agent.

1. We conclude that NTB's complaint stated a cause of action for negligent misrepresentation. Georgia adopted the standard for negligent misrepresentation set out in Restatement of Torts 2d, § 552 (1977). See *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681-682 (300 SE2d 503) (1983).

> Under this standard, one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

Id. The Supreme Court later clarified that professional liability for negligence did not extend

> to an unlimited class of persons whose presence is merely "foreseeable." Rather, professional liability for negligence . . . extends to those persons, or the limited class of persons who the professional is actually aware will rely upon the information he prepared.

*Badische Corp. v. Caylor*, 257 Ga. 131, 133 (356 SE2d 198) (1987).

Although NTB does not contend that SunTrust was actually aware that NTB specifically would rely on the stock certificates, the Uniform Commercial Code (UCC) goes beyond the general duty on professionals who supply information and imposes a specific duty on those who prepare and issue stock certificates to accurately disclose restrictions on the transfer of the shares. OCGA § 11-8-204 (UCC 8-204) provides:[1]

> [a] restriction on transfer of a [certificated] security imposed by the issuer, even if otherwise lawful, is ineffective against a person without knowledge of the restriction unless: . . . [t]he restriction is noted conspicuously on the security certificate.

*Dean Witter Reynolds, Inc. v. Selectronics*, 594 NYS2d 174, 177 (App. Div. 1993) (purchaser without knowledge). The protection provided by UCC 8-204 against a restriction not conspicuously noted on the security extends to a pledgee such as a broker-dealer with whom stock is deposited and who sells the stock at the instruction of the depositor. *Edina State Bank v. Mr. Steak*, 487 F2d 640, 644 (10th Cir. 1973) (Colorado law), cert. denied, 419 U. S. 883 (95 SC 150, 42 LE2d 123) (1974). This section "places the risk upon the issuer of consequences flowing from its failure to note restrictions on transfer on the face of a security" and thereby subjects the issuer to a claim for damages. *DeWitt v. American Stock Transfer Co.*, 433 FSupp. 994, 1001 (S.D. N.Y. 1977).

The transfer agent may also be liable under OCGA § 11-8-204 via OCGA § 11-8-406 which imposes a duty upon the transfer agent co-extensive with that of the issuer. *DeWitt*, 433 FSupp. at 1001. Thus we conclude that the class of persons for whom information regarding restrictions on the transfer of certificated securities was intended, either directly or indirectly, includes, at a minimum, those who regularly buy and sell such securities and those who regularly accept pledges of such securities as collateral for loans, margin accounts and similar transactions. As a result, NTB's complaint stated a cause of action for negligent misrepresentation for SunTrust's failure to disclose restrictions on the transfer of the Allegiant certificates, and the trial court erred in dismissing that claim.

2. We hold that NTB's complaint also stated a cause of action in the nature of a claim for conversion, the parties' respective rights and obligations being rooted in OCGA §§ 11-8-204, 11-8-401 and 11-8-406

---

[1] Article 8 of the UCC and the corresponding part of the Georgia Commercial Code were amended in 1998. As all events relevant to NTB's action occurred in 1995, the 1998 revisions do not apply in this case.

taken together. We conclude that as a transfer agent SunTrust had a duty to register transfers of certificated securities despite restrictions on the transfer of the securities imposed by the issuer where the restriction was not noted conspicuously on the security certificates and where the buyers lacked knowledge of the restrictions.

OCGA § 11-8-401 (a) (UCC 8-401 (a)) requires an issuer to register transfers of securities which meet certain conditions. The wrongful refusal to transfer gives the transferor a claim in the nature of conversion against the issuer. *Edina State Bank,* 487 F2d at 644. Under proper circumstances, the transferee may also pursue a claim for conversion. *DeWitt,* 433 FSupp. at 1000.

As discussed above in Division 1, the protection provided by UCC 8-204 against a restriction not conspicuously noted on the security extends to purchasers and pledgees. *Edina State Bank,* 487 F2d at 644; *Dean Witter,* 594 NYS2d at 177; *DeWitt,* 433 FSupp. at 1000. Taken together, OCGA §§ 11-8-204 and 11-8-401 (UCC 8-204 and 8-401) require the issuer to register a transfer presented in proper form, even if there were secret restrictions, if the purchaser or pledgee was ignorant of the restrictions. See *Dean Witter,* 594 NYS2d at 177; *Broadcort Capital Corp. v. Summa Med. Corp.,* 972 F2d 1183, 1188-1189 (10th Cir. 1992) (New Mexico law). The issuer may be held liable for conversion for refusing to register a transfer under these circumstances. Id. at 1192; *Edina State Bank,* 487 F2d at 644; *Dean Witter,* 594 NYS2d at 177; *DeWitt,* 433 FSupp. at 1000.

The issuer's duties are extended to the transfer agent under OCGA § 11-8-406 (UCC § 8-406) which imposes on a transfer agent, with regard to the particular functions performed, the same obligation to the holder or owner of a certificated security as the issuer has in regard to those functions. *DeWitt,* 433 FSupp. at 1001; see also *American Securities Transfer v. Pantheon Indus.,* 871 FSupp. 400, 403-405 (D. Colo. 1994); *Dean Witter,* 594 NYS2d at 177.

NTB's complaint put SunTrust on notice of its claims for relief: that Dr. Gilon, through LAN and Western, used Allegiant certificates prepared by SunTrust to defraud NTB and that NTB's damages flowed from SunTrust's failure to indicate restrictions on the transfer of the Allegiant stock on the certificates it prepared, as the Commercial Code required it to do. Under the Commercial Code and the persuasive authorities cited herein, evidence could be introduced which would sustain a grant of relief to NTB, and the trial court erred in dismissing the complaint for failure to state a claim.

*Judgment reversed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 15, 2000.

*Brock, Clay, Wilson & Rogers, David J. Larson,* for appellant.
*Arnall, Golden & Gregory, Robert L. Rothman, Aaron M. Danzig,* for appellee.